J-S30005-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD KEITH HALL, JR. | : | |
| | : | |
| Appellant | : | No. 1499 WDA 2019 |

Appeal from the Judgment of Sentence Entered August 29, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0001719-2018

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    FILED JULY 30, 2020

Ronald Keith Hall, Jr. (Appellant) appeals from the judgment of sentence imposed following his convictions of possession with the intent to deliver a controlled substance (PWID), possession of a controlled substance, and driving with a suspended or revoked license.[1]  Upon review, we affirm.

As a result of the delivery of controlled substances to a confidential police informant (CI) on August 21, 2017, Appellant was charged with conspiracy to deliver a controlled substance, PWID, conspiracy to possess a controlled substance, possession of a controlled substance, and driving with a suspended or revoked license.  Appellant appeared for a jury trial on August 5, 2019.  The trial court summarized the evidence presented at trial:

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  35 P.S. § 780-113(a)(30), 35 P.S. § 780-113(a)(16), and 75 Pa.C.S.A. § 1543(b)(1).

The Commonwealth first called Officer James Stevenson [(Officer Stevenson)], a patrolman with the City of Johnstown. Officer Stevenson testified that he had previously worked as a detective with the Fayette County Bureau of Investigations. His duties at that time included assisting with controlled witness buys, drug buys, and search warrants. . . .

Regarding the incident in question, Officer Stevenson was asked by Officer Thomas Patton to assist with a controlled buy. Officer Patton was in contact with a [CI] and the controlled buy was to take place at Martin's Plaza parking lot in Connellsville. The target of the controlled buy was Joseph Trillow [(Mr. Trillow)]. Officer Stevenson was provided with a photograph of Mr. Trillow beforehand.

Officer Stevenson arrived in an unmarked vehicle at Martin's Plaza parking lot at around 6 PM on August 21, 2017. It was evening and the sun was setting but it was still light out. There was nothing obstructing Officer Stevenson's view. Officer Stevenson witnessed the [CI] arrive first, with Officer Patton behind them.

About ten minutes later, the target vehicle arrived. It was a gold Ford Explorer with the windows down. Officer Stevenson saw a white male with a fluorescent highlighter-colored work vest. The Officer also saw Mr. Trillow in the passenger seat. As the Ford Explorer drove through the parking lot, it cut through the lot instead of driving up and down the aisles as it drove towards the [CI's] vehicle.

The Ford Explorer parked next to the [CI's] vehicle. The [CI] exited their vehicle and went to the passenger's side of the Explorer. After two or three minutes of conversation followed by an interaction, the [CI] got back in their own vehicle and both vehicles drove away. Officer Stevenson identified the driver of the Ford Explorer as [Appellant].

The Commonwealth also called Officer Thomas Patton [(Officer Patton)], who is employed as a Detective Lieutenant with the City of Connellsville Police and a Detective with the Fayette County Bureau of Investigations. Officer Patton testified that he organized the controlled buy involving the [CI] on August 21,

2017. The arrangement was for the [CI] to buy a bundle of heroin from [Mr.] Trillow in the parking lot of Martin's Plaza.

The [CI] and their vehicle were searched prior to the transaction with Mr. Trillow. The [CI] was also given department funds to pay for the drugs.

Officer Patton's testimony of the controlled buy was similar to Officer Stevenson's. After the controlled buy was over, the Ford Explorer drove diagonally across the parking lot towards the exit. Nobody got out of the Ford Explorer while it was [in] view of the Officers, and nobody in the Explorer conducted any other business at Martin's Plaza at that time.

After the Explorer left the parking lot, Officer Patton met with the [CI]. The informant handed Officer Patton ten stamp bags of heroin, which were sent to the State Police Crime Lab for testing. The informant did not have any money or any other drugs on them after the transaction.

As a result of the controlled buy, Officer Patton filed criminal charges against [Appellant].

The Commonwealth also called Stacy Cox to testify. Ms. Cox is employed as a Forensic Scientist at the State Police Crime Lab in Greensburg, Pennsylvania. Ms. Cox was admitted as an expert in the fields of forensic science and drug identification. Ms. Cox testified at trial that she tested the substances in the bag that the laboratory received in this case. Her conclusion was that the bag contained cocaine, a Schedule II controlled substance, and an opiate called U-47700, which is a Federal Regulations Schedule I controlled substance. . . .

At the conclusion of the trial, the [j]ury found [Appellant] guilty of [d]elivery of a [c]ontrolled [s]ubstance and [p]ossession of a [c]ontrolled [s]ubstance. This [c]ourt found [Appellant] guilty of the summary offense of [d]riving with a [s]uspended or [r]evoked [l]icense.

Trial Court Opinion, 12/4/19, at 2-4 (footnote omitted).

On August 29, 2019, the trial court sentenced Appellant to 60 days of

incarceration at his driving with a suspended or revoked license conviction, 12

- 3 -

to 24 months of incarceration at his PWID conviction, and imposed no further penalty for possession of a controlled substance. Appellant filed a timely post-sentence motion, which the trial court denied on September 16, 2019. This timely appeal followed. Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents three issues for review:

[1.] WHETHER THE EVIDENCE WAS LEGALLY AND FACTUALLY SUFFICIENT TO PROVE THAT [APPELLANT] POSSESSED AN ILLEGAL SUBSTANCE.

[2.] WHETHER THE EVIDENCE WAS LEGALLY AND FACTUALLY SUFFICIENT TO PROVE THAT [APPELLANT] POSSESSED AN ILLEGAL SUBSTANCE WITH THE INTENT TO DELIVER.

[3.] WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING THE POST[-]SENTENCE MOTIONS OF [APPELLANT] WHEN THE JURY'S VERDICTS WERE AGAINST THE WEIGHT OF THE EVIDENCE.

Appellant's Brief at 4.

In his first two issues, Appellant challenges the sufficiency of the evidence supporting his convictions for PWID and possession of a controlled substance. See Appellant's Brief at 8-10. Appellant argues that the Commonwealth failed to produce sufficient evidence supporting the possession element of each crime. Specifically, Appellant's argument rests on the fact that he was the driver of the vehicle and did not participate in the transaction. He avers that the "controlled buy was done by Mr. Trillow only from the passenger side of the vehicle, Appellant contends that he was not

- 4 -

involved, and there was insufficient evidence to prove that he [p]ossessed a [c]ontrolled [s]ubstance." Id. at 9.

We begin by noting the relevant standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Leaner, 202 A.3d 749, 768 (Pa. Super. 2019) (citation omitted). To reiterate, the jury, as the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. Commonwealth v. Melvin, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted). In conducting review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. Id. at 39-40.

"To sustain a conviction for the crime of possession of a controlled

- 5 -

substance, the Commonwealth must prove that [a]ppellant knowingly or intentionally possessed a controlled substance without being properly registered to do so under the Act." Commonwealth v. Brown, 48 A.3d 426, 430 (Pa. Super. 2012) (citing 35 P.S. § 780-113(a)(16)). "The crime of [PWID] requires the Commonwealth to prove an additional element: that Appellant possessed the controlled substance with the intent to manufacture, distribute, or deliver it." Brown, 48 A.3d at 430 (citing 35 P.S. § 780-113(a)(30)).

As to possession crimes, we have stated:

> The Crimes Code defines the term "possession" as "an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." 18 Pa.C.S.[A.] § 301(c).

> This Court has held that possession can be found by proving actual possession, constructive possession, or joint constructive possession. Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue. . . . [A] defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to

prove that he exercised dominion and control over those items. Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession.

If the only inference that the fact finder can make form the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. It is well settled that facts giving rise to mere 'association,' 'suspicion[,'] or 'conjecture,' will not make out a case of constructive possession."

Commonwealth v. Parrish, 191 A.3d 31, 36-37 (Pa. Super. 2018) (some citations omitted).

In addressing Appellant's sufficiency claims, the trial court explained:

Here, the evidence at trial was that [Appellant] was driving the Ford Explorer, and that [Mr.] Trillow was a passenger in the vehicle. Mr. Trillow was the target of a controlled drug buy. Both [o]fficers testified that they had a clear view of [Appellant], and both identified him in court during the trial.

[Appellant] drove the Explorer to the meeting place in Martin's Plaza for the controlled buy. The Ford Explorer drove diagonally through the parking lot at Martin's Plaza without driving up and down the aisles. The apparent eagerness with which the Explorer drove through the parking lot is evidence that the driver knew of the destination and what was to happen there. The Explorer then parked right next to the [CI's] vehicle.

[Appellant] never exited the Explorer during the transaction. After the transaction was over, neither [Appellant] nor Mr. Trillow had any other business in the Martin's Plaza. This is further evidence that the driver of the Explorer came to Martin's Plaza for one purpose alone—a drug transaction.

Those facts support the conclusion that [Appellant], as the driver of the vehicle, knew about the drug transaction, chose to participate in the transaction, and therefore had constructive possession over the drugs in the vehicle. . . . [Appellant] may not have been holding the drugs or physically exchanging the drugs

- 7 -

with the [CI], but he still had constructive possession over the drugs as the driver of the vehicle and as a willing participant in the drug transaction. Further, as noted above, it is possible for two people to have joint constructive possession.

The evidence presented at trial supports the finding that [Appellant] was in constructive possession of the drugs sold to the [CI].

Trial Court Opinion, 12/4/19, at 7-8.

Upon review, we conclude the Commonwealth produced sufficient evidence for the jury to reasonably infer that Appellant had constructive possession of controlled substances while in his vehicle on August 21, 2017. Officer Stevenson testified that while assisting with the controlled buy, he witnessed Appellant drive a gold Ford Explorer with Mr. Trillow in the passenger seat through the Martin's Plaza parking lot. N.T., 8/5/19, at 20-24. Officer Stevenson observed that Appellant "cut through the parking lot" and went "straight to the [CI's] vehicle." Id. at 21. Officer Stevenson further testified that at no time did Appellant or Mr. Trillow exit the Explorer, but he did observe the CI exit their vehicle and approach the Explorer. Id. Officer Stevenson testified that he witnessed a two-to-three minute interaction between the CI and the occupants of the Explorer before the CI returned to their vehicle and drove away. Id. at 22. Officer Stevenson testified that after the interaction with the CI, Appellant drove the Explorer out of the parking lot, making no other stops in the plaza. N.T., 8/5/19, at 23.

Officer Patton testified that he organized a controlled buy on August 21, 2017, with Mr. Trillow as the target. Id. at 43. Mr. Trillow agreed to meet

the CI in the Martin's Plaza parking lot to buy heroin. Id. Immediately preceding the transaction, Officer Patton searched both the CI and their vehicle, and also provided the CI with money to make the purchase. Id. at 44-45. The searches of the CI's person and vehicle did not uncover any controlled substance. Id. at 45.

Officer Patton testified that he then followed the CI to the Martin's parking lot, at no point losing sight of the CI's vehicle. Id. at 46. After waiting for some time in the parking lot, Officer Patton observed a gold Ford Explorer, driven by Appellant with Mr. Trillow in the passenger seat, cut diagonally through the parking lot. Id. at 48. Officer Patton further testified that Appellant drove straight through the parking lot to where the CI's truck was parked. Id. Officer Patton did not witness Appellant or Mr. Trillow exit the Explorer at any time, nor did he witness the Explorer make any other stops while in the parking lot. Id.

Officer Patton testified that once Appellant parked, the CI exited their vehicle and approached the passenger's side door of the Explorer. N.T., 8/5/19, at 49. The CI stood at the open window of the passenger side door of the Explorer for a couple of minutes, with the CI "actually leaning into the car," and speaking with Mr. Trillow. Id. at 49-50, 57. Eventually, the CI returned to their vehicle, and Appellant exited the parking lot by again driving diagonally across the lot to the exit. Id. at 50-51. Officer Patton testified that he then followed the CI back to an agreed meeting location, again never

losing visual contact with the informant's vehicle. Id. at 51. Once at the agreed upon location, the CI handed Officer Patton "ten stamp bags of heroin that was marked diesel." Id. at 51. The CI "and the vehicle were then again searched and found to be free of all monies and contraband." Id. Officer Patton further testified that the contents of the stamp bags were eventually tested and found to be a combination of cocaine and a Schedule I synthetic opioid called "U447700." Id. at 54.

As stated above, we view the evidence in the light most favorable to the Commonwealth as verdict winner, and give deference to the jury's credibility determinations as the finder of fact. Leaner, 202 A.3d at 768; Melvin, 103 A.3d at 39. We thus discern no reason to disturb the jury's determination that Appellant was guilty of PWID and possession of a controlled substance, where the jury was presented with sufficient facts from which it could reasonably infer that Appellant exercised dominion and control over the controlled substances. Parrish, 191 A.3d at 37. Specifically, there was sufficient evidence presented to the jury that Appellant knew controlled substances were in his vehicle and intentionally controlled them by driving his vehicle to meet with the CI. While Appellant argues that Mr. Trillow was in exclusive possession of the contraband while in Appellant's vehicle, the Commonwealth presented sufficient evidence for the jury to conclude that, by the totality of the circumstances, Appellant exercised constructive possession over the

controlled substances.  Appellant's first two claims are therefore meritless.[2]

Appellant's final claim is that his possession convictions are against the weight of the evidence.[3]  See Appellant's Brief at 10-11.  Appellant argues the "verdicts in this case was [sic] indeed shocking because there was no evidence as to where in the vehicle the drugs were[.]"  Id.  We have explained:

> Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence.  Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.  One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted, emphasis in original).  To allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court."  Commonwealth v.

_____

[2] Here, the jury found Appellant not guilty of conspiracy to commit PWID and conspiracy to commit possession of a controlled substance, but convicted him of the substantive crimes.  See N.T., 8/5/19, at 83.  While these verdicts appear to be logically inconsistent, "in light of our enduring acceptance of inconsistent verdicts in Pennsylvania," we conclude that the acquittals are not grounds for reversal of Appellant's convictions.  Commonwealth v. Moore, 103 A.3d 1240, 1250 (Pa. 2014).

[3] Appellant preserved this issue in compliance with Pa.R.Crim.P. 607 by raising it with the trial court in a post-sentence motion.  Appellant's Post-Sentence Motion, 9/6/19, at 4.

Talbert, 129 A.3d 536, 545 (Pa. Super. 2016) (citation omitted).

The trial court explained:

Here, the evidence presented at trial was that [Appellant] was driving the Ford Explorer the day in question. [Appellant] drove through a parking lot and parked next to a [CI]. At that time, a controlled drug purchase took place between the passenger of the Ford Explorer and the [CI]. The jury found that based on the evidence presented at trial, [Appellant] had constructive possession of the controlled substance and possessed the controlled substance with the intent to deliver it. This [c]ourt does not find the jury's verdict so contrary to the evidence as to shock one's sense of justice.

Trial Court Opinion, 12/4/19, at 10.

Our review reveals that the trial court did not abuse its discretion in denying Appellant's weight claim. As noted above, the Commonwealth was permitted to prove Appellant constructively possessed the controlled substances through wholly circumstantial evidence. Parrish, 191 A.3d at 36-37. In explaining its denial of Appellant's motion challenging the weight of the evidence, the trial court cites circumstantial evidence to support the jury's finding that Appellant constructively possessed controlled substances on August 21, 2017 by transporting the controlled substances to a controlled buy with a police informant. Trial Court Opinion, 12/4/19, at 10. As noted above, the jury heard evidence that the CI and their vehicle were searched prior to their interaction with Appellant and Mr. Trillow; after that interaction, the CI produced ten stamp bags containing controlled substances. N.T., 8/5/19, at 45, 51. Therefore, the trial court properly exercised its discretion in concluding "[t]he evidence [was not] so tenuous, vague and uncertain,"

Talbert, 129 A.3d at 545 (citation omitted), "as to shock one's sense of justice." Trial Court Opinion, 12/4/19, at 10. Therefore, Appellant's final claim does not merit relief.

For the forgoing reasons, Appellant's appeal is without merit and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2020